# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DARIUS BALARK,                )

               )

      Plaintiff,        )

               )

      v.            )   Case No. 25 C 5633

               )

SGT. PRICE, Star No. 3383,    )   Judge Joan H. Lefkow

INVESTIGATOR HARRIS, Star No. 6040,   )

SHERIFF THOMAS DART, and    )

COOK COUNTY, a Municipal     )

Corporation,          )

               )

      Defendants.    )

## OPINION AND ORDER

Darius Balark brings this section 1983 action against Cook County, Thomas Dart, and employees of the Cook County Sheriff's Office, Sergeant Price and Investigator Harris,[1] asserting Fourth and Fifth Amendment violations and Illinois common law claims of coerced confession, false arrest, malicious prosecution and unlawful detention. Balark also seeks indemnification against Cook County for his federal claims and liability under a theory of *respondeat superior* for his state law claims. Before the court is defendants' motion (dkt. 17) to dismiss the complaint (dkt. 1). For the reasons stated below, the court grants the motion in part and denies it in part.[2]

---

[1] The first names of the officers are not alleged.

[2] The complaint makes no allegation of Sheriff Dart's personal involvement. Thus, the court assumes that he is sued only in his official capacity and, as Balark represents, as a nominal defendant for purposes of indemnity obligations.

1

**BACKGROUND[3]**

On July 23, 2023, Sergeant Price and Investigator Harris performed a home compliance check on the residence of Balark. At that time, Balark was under a court order to participate in an electronic monitoring program with the Sheriff's Office. Balark and his mother, Lakeisha Smith, and two of Balark's siblings were present. Balark's aunt owned the residence, and she and her family had access to and used the residence. During the home compliance check, the officers found a bag containing a firearm and cannabis in an uninsulated back porch. Balark did not have sole access to this back porch, as it was accessible from other areas of the property.

Balark was then handcuffed, seated in the back of a squad car, and advised of his *Miranda* rights. Price asked Balark whether he had knowledge of anything illegal in the residence. When Balark denied knowledge, Price directed that Smith be brought to the squad car. He told Smith, within earshot of Balark, that Balark's denials meant that she would be arrested because a firearm was found at her apartment. Price also told Balark to "stop playing with" him and asked Balark what was in the bag. Balark denied knowledge of the bag's contents. Price then instructed other officers to handcuff Smith. Balark, believing that his mother would be arrested if he did not admit to knowledge of what was in the bag, guessed that there was a firearm in the bag. But when Price asked Balark to describe the firearm, he could not provide details, since he was merely guessing. Price then asked Balark what kind of gun was in the bag several more times. Balark continued to answer that he did not know.

At some point, Price turned to Smith and told her that he was trying to prevent her from going to jail, "but you see what your son is doing." (Dkt. 1 ¶ 32.) Smith expressed that she could

---

[3] This section is drawn from Balark's complaint. For the purposes of the motion to dismiss, Balark's well-pleaded allegations are accepted as true. *See Alarm Detection Sys., Inc.* v. *Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (citation omitted).

not go to jail because of her career and children. Balark, fearing that his mother would be arrested, falsely admitted to possessing the bag, but he continued to reiterate that he could not describe the firearm. Following continued questioning, Balark said that he had obtained the gun the previous day from his cousin. The officers arrested both Balark and Smith, although Smith was released without charges.

Later, Harris testified before a grand jury that the bag containing the firearm was discovered in a room only accessible to Balark, which Harris knew not to be true. Balark was then charged with one count of unlawful possession of a firearm by a repeat felon offender under 720 Ill. Comp. Stat. 5/§ 24-1.7(a) and two counts of unlawful possession of weapons by felons or persons in the custody of the Department of Corrections under 720 Ill. Comp. Stat. 5/§ 24-1.1(a).

On May 22, 2024, the Circuit Court of Cook County granted Balark's motion to suppress his statements and entered a judgment of dismissal. Balark had been incarcerated at the Cook County Jail from his arrest on July 23, 2023, until the date he was found not guilty. He also incurred financial costs in paying for legal representation for his defense.

In support of their motion to dismiss, defendants argue that (1) the individual officers are protected by absolute or qualified immunity; (2) Balark's claim of coerced confession fails as matter of law; and (3) probable cause existed for Balark's arrest and prosecution. Defendants also argue that Cook County and Sheriff Dart cannot be held liable under a theory of *respondeat superior*.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards* v. *Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule

3

12(b)(6), the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in a plaintiff's favor. *Tamayo* v. *Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted). Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Cincinnati Life Ins. Co.* v. *Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual detail, accepted as true, to state a plausible claim for relief that rises above the speculative level. *Iqbal*, 556 U.S. at 678 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).

## ANALYSIS

### I.     Absolute Immunity for Witness Testimony

Defendants argue that Harris is entitled to absolute immunity based on the doctrine of witness immunity because the only allegation against her is that she knowingly testified falsely before the grand jury. A witness has absolute immunity for her testimony before a grand jury. *Shelton* v. *Madigan*, No. 06 C 4259, 2007 WL 3341681, at *5 (N.D. Ill. Nov. 6, 2007) (citing *Kompare* v. *Stein*, 801 F.2d 883, 890 (7th Cir. 1986)); *Briscoe* v. *LaHue*, 460 U.S. 325, 345–46 (1983). This immunity applies even where a plaintiff claims that a grand jury witness conspired to present false testimony. *See Rehberg* v. *Paulk*, 566 U.S. 356, 369 (2012). Thus, even taking as true Balark's allegation that Harris provided false testimony to the grand jury, Harris is absolutely immune from civil liability for that testimony. Since Balark alleges no other conduct on the part of Harris,[4] she must be dismissed as an individual defendant.[5] *Cf. id.*

---

[4] Although Balark alleges that Harris was present for the home compliance check, he does not allege that Harris participated in his questioning or arrest.

[5] In his response to the motion, Balark argues that discovery may reveal her wider participation in the alleged misconduct, but the complaint before the court does not justify maintaining an action against her.

**II.      Qualified Immunity**

Defendants also seek dismissal of Balark's § 1983 claims against individual officers on the basis of qualified immunity, which shields government actors from liability for civil damages "where their conduct does not violate clearly established statutory or constitutional rights." *Xiong* v. *Wagner*, 700 F.3d 282, 289 (7th Cir. 2012) (citations omitted). Although the principle is well established, a court "often cannot tell from a complaint whether qualified immunity applies," since its application generally "depend[s] on the particular facts of a given case." *Roldan* v. *Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Jacobs* v. *City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). Complaints "rarely develop a robust factual record, given that, at the pleading stage, a plaintiff need only 'state a claim to relief that is plausible on its face.'" *Reed* v. *Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Twombly*, 550 U.S. at 570 (2007)). As a result, "the motion-to-dismiss stage is rarely 'the most suitable procedural setting to determine whether an official is qualifiedly immune.'" *Stroud*, 52 F.4th at 339 (7th Cir. 2022) (quoting *Hanson* v. *LeVan*, 967 F.3d 584, 589 (7th Cir. 2020)); *see also Alvarado* v. *Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (citation omitted) ("[A] complaint is generally not dismissed under Rule12(b)(6) on qualified immunity grounds.").

Here, additional fact development will be required to determine whether qualified immunity is applicable. Accordingly, the court declines, at this juncture, to dismiss Balark's claims against individual officers on qualified immunity grounds.

**III.     Tort Immunity**

Defendants further seek dismissal under the Illinois Tort Immunity Act. The Tort Immunity Act "protect[s] local public entities and public employees from liability arising from the operation of government." 745 Ill. Comp. Stat. 10/§ 1-101.1a. But like qualified immunity,

5

the Tort Immunity Act is "an affirmative defense, and a plaintiff does not have to plead around affirmative defenses." *Morris* v. *City of Chi.*, No. 24-CV-1431, 2025 WL 2410370, at *7 (N.D. Ill. Aug. 20, 2025) (quoting *Prokop* v. *Hileman*, 588 F. Supp. 3d 825, 844 (N.D. Ill. 2022)). The court therefore "declines to dismiss based on the Tort Immunity Act at this stage of the litigation." *Id.* (quoting *Rogers* v. *Dart*, No. 24-CV-03739, 2025 WL 790740, at *5 (N.D. Ill. Mar. 12, 2025)).

**IV.     Fifth Amendment Claim**

Moving to Balark's individual claims, defendants argue that Count I fails as a matter of law because, based on the totality of the circumstances, Balark's statements were voluntary and not coerced. To state a coerced confession claim, Balark must allege that (1) his confession was improperly coerced and (2) his confession was used against him in a criminal case. *See Chavez* v. *Martinez*, 538 U.S. 760, 770 (2003). Since the Fifth Amendment prohibits the use of coerced confessions not only at trial but also, as Balark alleges here, at pre-trial hearings, *Jackson* v. *Curry*, 888 F.3d 259, 265 (7th Cir. 2018), Balark has adequately alleged this second element. As a result, the question is whether Balark has sufficiently alleged coercion.

Courts evaluate whether a plaintiff's statements were coerced under a totality of the circumstances test. *Id.* Under this test, courts must consider "the characteristics of the accused and the nature of the interrogation." *Id.* (citations and quotations omitted). Relevant factors include "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep." *Hicks* v. *Hepp*, 871 F.3d 513, 527 (7th Cir. 2017) (quoting *United States* v. *Sturdivant*, 796 F.3d 690, 695 (7th Cir. 2015)). Where the "circumstances reveal that the interrogated person's will

6

was overborne," a Fifth Amendment violation accrues. *Jackson*, 888 F.3d at 265 (citations and quotations omitted).

Balark alleges that he merely guessed that a firearm had been recovered during the home compliance check after Price threatened his mother with arrest. And he falsely admitted to owning the firearm only after Price continued to threaten his mother with arrest even after she expressed that she could not go to jail because of her career and her children. Based on these allegations, the court cannot determine as a matter of law that Balark's confession was voluntary. *See Sornberger* v. *City of Knoxville, Ill.*, 434 F.3d 1006, 1023 (7th Cir. 2006) (collecting cases). ("Threats to a suspect's family or children, even if implicit, certainly may render confessions involuntary for purposes of due process.").

## V.      Fourth Amendment and Common Law Claims

Defendants argue that Balark's claims for false arrest, malicious prosecution, and unlawful pretrial detention (Counts II–VI) fail because probable cause existed for Balark's arrest, detention, and prosecution.[6] Probable cause is an absolute defense to claims brought against police officers for wrongful arrest, unlawful detention, or malicious prosecution. *See Braun* v. *Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) (citations omitted); *Mustafa* v. *City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) (citation omitted). Probable cause exists where, at the time of the event, the facts and circumstances within the officer's knowledge are sufficient for a prudent person to believe that the suspect has committed an offense. *Neita* v. *City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016). "Evidence that was 'the product of coercion' cannot 'supply probable

---

[6] Separately, defendants argue that, to the extent these claims are brought under the Fourteenth Amendment, these claims also fail. Balark has clarified, however, that his constitutional claims for false arrest, malicious prosecution, and unlawful pretrial detention are brought under the Fourth Amendment, rather than the Fourteenth Amendment. This is a permissible basis for bringing these claims. *Cf. Neita* v. *City of Chi.*, 148 F.4th 916, 939 (2025).

cause.'" *Coleman* v. *City of Chi.*, No. 18-CV-00998, 2025 WL 2410325, at *53 (N.D. Ill. Aug. 20, 2025) (quoting *Hart* v. *Mannina*, 798 F.3d 578, 588 (7th Cir. 2015)); *cf. Manuel* v. *City of Joliet, Ill.*, 580 U.S. 357, 367 (2017) (internal citation omitted) (Probable cause may be lacking "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification.").

According to Balark, he did not have sole access to the contraband, and he denied knowledge of the contents until the officers threatened to arrest his mother. Only after Balark's mother was handcuffed did Balark falsely admit that he owned the firearm. Balark's admission was later suppressed by a state court judge, and all criminal proceedings against him were terminated.[7] As previously discussed, the threats of arrest made against Balark's mother to obtain Balark's confession permit an inference that his confession was not voluntary. And, while not conclusive, the state court's decision to suppress Balark's statements and dismiss criminal proceedings against him also provides circumstantial evidence that probable cause was lacking.

Defendants argue that Balark's grand jury indictment is *prima facie* evidence of probable cause, citing *Lee* v. *Harris*, 127 F.4th 666, 672 (7th Cir. 2025). *Lee* clarifies, however, that this presumption does not apply where "law enforcement obtained the indictment through improper or fraudulent means." *Id.* (quoting *Coleman* v. *City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019)). If, as alleged, Harris provided false testimony at the grand jury, one could infer that the indictment was improperly obtained. If so, the presumption of probable cause does not apply. This is a question to be determined by a jury.

---

[7] The basis of the state court's disposition is not alleged.

## VI.     *Respondeat Superior* **Liability**

Defendants contend that they are not responsible for the conduct of Price and Harris under the doctrine of *respondeat superior*, even if they are found to have violated Illinois law

As an initial matter, defendants are correct that "[t]he sheriff is a county officer and, as such, is not in an employment relationship with the County of Cook." *Moy* v. *Cnty. of Cook*, 640 N.E.2d 926, 931 (Ill. 1994). As such, *respondeat superior* claims cannot be brought against Cook County. Thus, the court dismisses Count VIII against Cook County.[8]

Nevertheless, to the extent Balark brings his state law claims against Sheriff Dart based on a theory of *respondeat superior* liability, those claims may proceed. Although defendants correctly point out that "*respondeat superior* is not by itself a cause of action," *Osundairo* v. *Geragos*, 447 F. Supp. 3d 727, 743 (N.D. Ill. 2020) (citations omitted), Balark's theory of liability under *respondeat superior* derives from his state law claims[9] for false arrest and malicious prosecution.[10] In short, Sheriff Dart is "liable for any neglect or omission of the duties of his or her office, when occasioned by a deputy or auxiliary deputy, in the same manner as for his or her own personal neglect or omission." 55 Ill. Comp. Stat. 5/§ 3-6016.

---

[8] That said, "745 ILCS 10/9-102 require[s] a county to pay for a judgment entered against the county sheriff in his official capacity." *Askew* v. *Sheriff of Cook Cnty.*, 568 F.3d 632, 636 (7th Cir. 2009). Thus, "in any suit seeking damages from an independently elected county officer," the county is "an indispensable party to the litigation." *Id.* (citation omitted). As such, Cook County remains an indispensable party in this case for purposes of indemnification.

[9] Defendants rely, in part, on *Galdikas* v. *Fagan* to argue that Balark's claims against Dart must be dismissed, since an individual may not be liable under section 1983 without direct participation. 342 F.3d 684, 693 (7th Cir. 2003) (citations omitted). *Galdikas* is inapposite, however, since Balark bases his *respondeat superior* theory of liability only on state law claims.

[10] The doctrine of *respondeat superior* has been codified. In *Brown* v. *King*, an Illinois appellate court held that 55 Ill. Comp. Stat. 5/§ 3-6016 expands common law *respondeat superior* liability to omissions or neglect by sheriff's office employees. 767 N.E.2d 357, 363–64 (Ill. App. Ct. 1st Dist. 2001). The court also determined that 745 Ill. Comp. Stat. 10/§ 9-102 allows claims to be brought against a county sheriff based on *respondeat superior*. *See id.* (citing *Wilson* v. *City of Chicago*, 120 F.3d 681, 685–86 (7th Cir. 1997)).

9

## CONCLUSION AND ORDER

For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss. (Dkt. 17.) The court dismisses Count VIII with prejudice to the extent it is brought against Cook County. The court further dismisses without prejudice all claims against Harris. Defendants' motion is otherwise denied. A status hearing is set for May 6, 2026 at 9:30 a.m. in Courtroom 2201.

Date: March 25, 2026

_____

U.S. District Judge Joan H. Lefkow

10